## FALK v. ROBERTSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

,No. 35. Argued October 30, 31, 1890. — Decided November 24, 1890.

Schedule F of section 2502 of Title 33 of the Revised Statutes, as enacted
by section 6 of the act of March 3, 1883, c. 121, (22 Stat. 503,) provided as
follows, in regard to duties on imported tobacco: "Leaf tobacco, of
which eighty-five per cent is of the requisite size and of the necessary
fineness of texture to be suitable for wrappers, and of which more than
one hundred leaves are required to weigh a pound; if not stemmed, sev-
enty-five cents per pound; if stemmed, one dollar per pound. All other
tobacco in leaf, unmanufactured, and not stemmed, thirty-five cents per
pound." Tobacco was imported in bales, each of which contained a
quantity of Sumatra leaf tobacco answering the description in the stat-
ute of that dutiable at 75 cents per pound, except that it formed only
about 83 per cent of the contents of the bale. The rest of the bale con-
sisted of inferior leaf tobacco, called "fillers," which was separated from
the 75-cent tobacco by strips of paper or cloth, making the one kind
readily separable from the other, on the opening of the bale. More than
85 per cent of the 75-cent tobacco answered the description of tobacco
dutiable at that rate: Held, that the whole of the 75-cent tobacco was
dutiable at that rate, and that the contents of the bale, as a whole, were
not dutiable at 35 cents per pound.
The unit upon which the 85 per cent was to be calculated was not the entire
bale.
The case of Merritt v. Welsh, 104 U. S. 694, distinguished.

THIS was an action at law, brought in the Supreme Court
of the State of New York, by Gustav Falk and Arnold Falk
against William H. Robertson, late collector of the port of
New York, and removed by the defendant into the Circuit
Court of the United States for the Southern District of New
York, to recover back duties paid under protest on certain
importations of leaf tobacco into the port of New York from
Hamburg and Holland, in January and April, 1884. The
amount of duty exacted by the collector was $8408. The
plaintiffs contended that the proper duty was only $5113.85;
and they sued to recover back the difference, $3294.15. They
made due protest and appeal.

It was claimed by the government and conceded by the plaintiffs that the tobacco was dutiable under the following provisions of Schedule F of section 2502 of Title 33 of the Revised Statutes, as enacted by section 6 of the act of March 3, 1883, c. 121, 22 Stat. 503: "Leaf tobacco, of which eighty-five per cent is of the requisite size and of the necessary fineness of texture to be suitable for wrappers, and of which more than one hundred leaves are required to weigh a pound, if not stemmed, seventy-five cents per pound; if stemmed, one dollar per pound. All other tobacco in leaf, unmanufactured, and not stemmed, thirty-five cents per pound." The question in issue was whether any of the tobacco was dutiable at seventy-five cents a pound; and the court at the trial, before Judge Shipman, directed a verdict for the defendant. Judgment was entered accordingly, to review which the plaintiffs brought a writ of error.

The tobacco in question was imported into the United States in bales. In each bale was a quantity of leaf tobacco answering the description in the statute of that dutiable at 75 cents per pound, except that it formed only about 83 per cent of the contents of the bale. It was Sumatra tobacco, imported from Sumatra into Europe in the same bale in which it was imported into this country. When the bale arrived in Europe, the entire contents of it were within the description of that dutiable here at 75 cents a pound; but in Europe the bale was repacked, by taking out of it a quantity of its contents and substituting therefor a sufficient quantity of inferior tobacco, called "fillers," to reduce the proportion of the 75-cent tobacco in the entire bale to less than 85 per cent of the contents of the bale, as imported into the United States. The 75-cent tobacco was separated from the other by strips of paper or cloth, so that the one kind was readily distinguishable and separable from the other when the bale was opened in the United States.

*Mr. Joseph H. Choate*, (with whom was *Mr. Charles C. Beaman* on the brief,) for plaintiffs in error.

I. The Act of March 3, 1883, clearly requires, in any case, that only one rate of duty shall be imposed upon the leaf tobacco in question, considered and appraised, bale by bale, each bale being taken as a unit, and not one rate of duty on so much of the leaf tobacco, in a particular bale, as may be suitable for wrappers, and another rate on so much of such tobacco as may not be suitable for wrappers under the standards fixed by the statute.

The article or thing imported, in this case, upon which the duty is imposed, is "leaf tobacco," and Schedule F of section 2502 of the Revised Statutes, as amended by the Act of 1883, 22 Stat. 503, provides for the duty thereon as follows: "Leaf tobacco, of which eighty-five per cent is of the requisite size and of the necessary fineness of texture to be suitable for wrappers, and of which more than one hundred leaves are required to weigh a pound, if not stemmed, seventy-five cents per pound; if stemmed one dollar per pound. All other tobacco in leaf, unmanufactured, and not stemmed, thirty-five cents per pound." This eighty-five per cent standard and the standard of weight fixed by the statute refer to the leaf tobacco imported, to be appraised and classified as a whole, and bale by bale.

It is a cardinal rule that, in construing statutes imposing duties upon imports, that construction will be adopted, when the phraseology is doubtful or ambiguous, which is most favorable to the importer. *Powers* v. *Barney,* 5 Blatchford, 202; *Adams* v. *Bancroft,* 3 Sumner, 384; *United States* v. *Wigglesworth,* 2 Story, 369; *United States* v. *Ullman,* 4 Ben. 547; *Hartranft* v. *Wiegmann,* 121 U. S. 609; *Merritt* v. *Welsh,* 104 U. S. 694, 702.

The statute must, therefore, be so construed as to admit of the imposition of but one rate of duty upon the leaf tobacco in question, and that rate must be determined by an examination and appraisement of the invoice, bale by bale, each bale being treated as a unit for the purposes of appraisement.

It is a well-established rule of construction, that the language of all statutes levying duties on imports will be presumed to

have been used in an ordinary commercial and popular sense. *200 Chests of Tea, Smith Claimant*, 9 Wheat. 430; *Barlow* v. *United States*, 7 Pet. 404; *United States* v. *112 Casks of Sugar*, 8 Pet. 277; *Elliott* v. *Swartwout*, 10 Pet. 137; *Curtis* v. *Martin*, 3 How. 106; *Arthur* v. *Cumming*, 91 U. S. 362; *Tyng* v. *Grinnell*, 92 U. S. 467; *Arthur* v. *Morrison*, 96 U. S. 108; *Arthur* v. *Lahey*, 96 U. S. 112; *Greenleaf* v. *Goodrich*, 101 U. S. 278; *Recknagel* v. *Murphy*, 102 U. S. 197; *Robertson* v. *Salomon*, 130 U. S. 412, 415.

Not only so, but it is also true that the construction of a tariff act adopted by the Treasury Department, while not conclusive upon the courts, is entitled to weight and respectful consideration. *United States* v. *Moore*, 95 U. S. 760; *Brown* v. *United States*, 113 U. S. 568; *United States* v. *Hill*, 120 U. S. 169; *United States* v. *Johnston*, 124 U. S. 236; *McCall* v. *Lawrence*, 3 Blatchford, 360, 363; *Smythe* v. *Fiske*, 23 Wall. 374, 382.

It is true that in recent cases, arising since this importation, the Department and its officials have vacillated over the construction of this act. But, from the very beginning of tariff legislation, in respect to tobacco and all merchandise coming in bales or packages, it has been the uniform practice and usage of the customs officials to treat the bale or package as a unit for purposes of appraisal and classification. That has likewise been the uniform commercial usage. It is uncontradicted testimony in this case that tobacco has always been bought and sold, imported, invoiced, and entered by the bale; and, as the expert appraiser tells us in this case, it has always been "received and disposed of under the Treasury regulations, by the bale, as to appraisal, and as to warehousing and as to withdrawal."

The bale or package of merchandise is, and always has been, the unit for purposes of appraisement, and it must, we believe, be so regarded in this instance. When the statute refers to 85 per cent of the tobacco, as the "article imported," it must be assumed that Congress had in mind some definite and distinct unit or quantity from which that percentage was to be computed. Of course, the duty being levied upon the

article imported — the leaf tobacco in question — the entire invoice or importation might, ordinarily speaking, be regarded as the unit upon which the duty is to be levied; but in practice, where the merchandise is imported, as here, in separate bales and packages, some smaller and component unit must be used in making the appraisement and arriving at the percentage; and the bale has, as we have seen, been uniformly adopted and accepted as that unit. This act must be deemed to have been passed, and must be read, in the light of that usage.

This contention, that Congress regarded the bale or package as the unit from which to compute the percentage, is not only strengthened, but is rendered almost indisputable, by a consideration of the history of the enactment, and of the amendments proposed thereto from time to time during its progress toward final passage by the Senate, to which body it had been sent from the House. As to the propriety of making that reference in case of doubt, see *Merritt* v. *Welsh,* 104 U. S. 694, 702; *Blake* v. *National Banks,* 23 Wall. 307, 319.

Still further light is furnished us by other provisions of the Revised Statutes on the general subject of appraisal and the levying of duty on imports. Section 2901 declares that: "The collector shall designate on the invoice at least one package of every invoice, and one package at least of every ten packages of merchandise . . . to be opened, examined and appraised." Section 2911 directs the appraisers, when there are articles of a different quality in the same package, to adopt the value of the best article; and section 2912 provides for appraisement of wool when there are different qualities in the same bale, or in different bales in the same invoice. See also the act of May 1, 1876, 19 Stat. 49.

That this rule of appraisement established by the Revised Statutes is general, and is to be applied to all parts of the various statutes constituting our system of tariff legislation, can hardly be disputed. *Saxonville Mills* v. *Russell,* 116 U. S. 17. In short, commercial usage, the practice of the customs' officials and the language of all statutes, constituting a part of the same system, all point to the bale or package as the only unit upon which to estimate this 85 per cent, the whole bale or package to be rated and appraised accordingly.

In recognition of this usage and practice, and as a most important further legislative declaration of intention, reference may be made to the Tariff Law of 1890, approved October 1, 1890.   Paragraph 242 of that act reads as follows:

"Leaf tobacco suitable for cigar-wrappers, if not stemmed, two dollars per pound; if stemmed, two dollars and seventy-five cents per pound : *Provided,* that if any portion of any tobacco imported in any bale, box or package, or in bulk, shall be suitable for cigar-wrappers, the entire quantity of tobacco contained in such bale, box or package, or bulk, shall be dutiable; if not stemmed, at two dollars per pound; if stemmed, at two dollars and seventy-five cents per pound." Sess. Laws, 585.

This act was framed and passed while the case at bar was pending in this court, and, indeed, after all the briefs in the case had been filed with the clerk, and while they were in the possession of the Government Departments, and is a legislative declaration of a very suggestive, if not conclusive, character.

It has been said, however, but in quite another connection, that each invoice or entry is a separate transaction for purposes of appraisement. *Sampson* v. *Peaslee,* 20 How. 571, 580.   That decision is not applicable here, for it was there held simply that two or more separate invoices could not be put together for the purpose of reaching an aggregate value, which should not be exceeded by the prescribed ten per cent upon the appraisement, although one of the invoices, taken alone, would be so exceeded.

It is also suggested that the individual leaf should be taken as a unit.   It is not disputed that the leaf cannot in practice be adopted as a unit.   It is not practicable to separate the hands of tobacco.   After several fluctuating decisions, eight in all, the Treasury finally, in August, 1887, reached the decision of which we complain : that "Every leaf, 85 per cent of which is suitable for wrappers, and the weight of which is such that more than one hundred of such leaves would be required to weigh a pound, is liable to the high rate of duty : " a rule which strains after an interpretation which violates every canon

of construction, and every known commercial and official usage and practice. As a whole this group of decisions, owing to their inconsistency, cannot be accorded any weight in this Court as establishing either a uniform official usage or an official construction, which, under different circumstances, might be received as an aid in construing the act.

II. In the construction of this statute, and in applying it to the present importation of leaf tobacco, the fact that the bales in question were repacked in Holland, and that they contained some leaf tobacco, not suitable for wrappers, is wholly immaterial. There can be no pretence that there was any fraudulent evasion on the part of these plaintiffs in error.

In *Falk* v. *Robertson*, 25 Fed. Rep. 897, 898, the Court, while deciding against the plaintiffs in reference to this very importation, and on the very ground that they had introduced inferior leaf tobacco into the bales in order to lower the quality of the whole of each bale and of the invoice, said: "Justice to the plaintiffs, however, requires that they should be entirely acquitted of any attempt to deceive the customs officers by what they did; for it was done with their full knowledge, and partly at their suggestion, and after a like importation, with the full knowledge of all, had been passed, as a test case, at the lower rate. Still the Department is not estopped, nor claimed to be, from changing its decision, although it may work a hardship."

*Mr. Assistant Attorney General Maury* for defendant in error.

Mr. JUSTICE BLATCHFORD, after stating the case, delivered the opinion of the court.

Leaf tobacco consists of three classes, "wrappers," "fillers," and "binders." "Wrappers" are leaves suitable for the outside finish of a cigar. "Fillers" are leaves that make up the main body of the cigar; and "binders" are the secondary or inside wrapper, and hold together the loose material which constitutes the filling. Prior to the passage of the act of

1883, the various grades of leaf tobacco — wrappers, fillers, and binders — were applied to different uses, were bought and sold under their several names and were of different value in the market; and prior to that time bales of leaf tobacco in the trade were, as a rule, homogeneous as to their contents, each one consisting of only one of these three classes.

The plaintiffs claim that, upon the addition to the bale of enough inferior tobacco to reduce the proportion, in the entire bale, of the fine wrapper tobacco below 85 per cent, the whole of the tobacco in the bale was made dutiable at only 35 cents per pound. They contend that the unit upon which the 85 per cent is to be calculated is the entire bale. But we cannot agree with this view. The statute does not refer to tobacco in bales. It does not say that the 85 per cent is to be 85 per cent of the contents of a bale; but the duty of 75 cents per pound is imposed upon any quantity of leaf tobacco of the specified quality and weight, if not stemmed. In the present case, the carefully separated and distinguishable quantity of tobacco in the bale which was of the specified size, fineness and weight, was the whole of it, that is, 100 per cent, and more than 85 per cent, of that size, fineness and weight; and all of it fell under the description of what was dutiable at 75 cents a pound. The unit is not the bale, but is the separated quantity of such leaf tobacco. That quantity stands, for the purposes of duty, as if it had been imported in a bale which contained nothing but itself. By the method of packing, the wrapper tobacco and the filler tobacco remained entirely distinct. The association of them in the bale was, evidently, only for the purpose of avoiding the higher duty imposed upon the superior tobacco. This association was to be dissolved the moment the bale was opened in the United States, because the two grades of tobacco sold for different prices in the market. It appears from the testimony of one of the plaintiffs that, prior to the act of 1883, the bale of Sumatra tobacco that was known and dealt in was a bale containing about 160 or 170 pounds of that tobacco, and inferior tobacco was not imported in the same bale with such Sumatra tobacco. The unit of the statute, therefore, must be held to be leaf

tobacco wrappers answering the description which, when reaching the named percentage, is subject to the duty of 75 cents a pound.

It is argued for the plaintiffs that the bale must be considered as the unit, because it is required by section 2901 of the Revised Statutes that, for the purpose of appraisement, the collector shall designate at least one package of every invoice, and at least one package of every ten packages. Reference is made also to sections 2911 and 2912, which provide what shall be done in case the appraisers find. in a given package articles of wool or cotton of similar kind but different quality; and to section 2915, which provides for the taking of samples from packages of sugar, to ascertain the quality; and to the act of May 1, 1876, c. 89, (19 Stat. 49,) providing for the separate entry of one or more packages contained in an importation of packed packages, consigned to one importer or consignee, and of which there is no invoice. But we do not perceive that these statutory provisions affect the question in hand. They refer only to what is to be done as to appraisement, when two articles of different quality are imported in the same package, and to the separate entry of a package packed in a larger package; but there is nothing in these provisions which shows that the 85 per cent in question is to be regarded as meaning 85 per cent of the entire contents of a package containing separable and separated quantities of leaf tobacco of two different qualities, and subject to two different duties.

In the view which we thus take of this case, there is nothing which conflicts with the decision in *Merritt* v. *Welsh*, 104 U. S. 694. In that case, under Schedule G of section 2504 of the Revised Statutes, the sole test of the dutiable quality of sugars was held to be their actual color, as graded by the Dutch standard; and it was held that if the particular color was given to the sugar in and by the process of manufacture, and was not artificially given to it after it had been manufactured, it was subject only to the duty imposed upon sugar of a specified color. The question there decided was whether, in case the sugar was not artificially colored, for the purpose of avoid-

ing duties, after it was manufactured, its dutiable quality was to be decided by its actual color, graded by the Dutch standard, or by its saccharine strength as ascertained by chemical tests; and it was held that the actual color was the test. So, in the present case, the actual qualities belonging to the given separable quantity of leaf tobacco which is made dutiable at 75 cents a pound, determine the rate of duty.

The present case was tried twice. At the first trial, before Judge Wheeler, he directed a verdict for the plaintiffs; but he subsequently granted a new trial. In his opinion granting it, 25 Fed. Rep. 897, he said: "Justice to the plaintiffs, however, requires that they be entirely acquitted of any attempt to deceive the customs officers by what they did; for it was done with their full knowledge, and partly at their suggestion, and after a like importation, with the full knowledge of all, had been passed, as a test case, at the lower rate." We concur in this view.                                    *Judgment affirmed.*