## In re BLUMLEIN et al.

### (Circuit Court of Appeals, Second Circuit. April 18, 1893.)

1. CUSTOMS DUTIES—LEAF TOBACCO—UNIT OF CLASSIFICATION.

Under the provisions of the tariff act of March 3, 1883, pars. 246, 247, that "leaf tobacco of which 85 per cent. is" suitable for wrappers, and of a specified grade, shall be subject to a certain duty, and that "all other tobacco in leaf" shall pay a lower duty, the unit upon which the percentage is to be calculated is the bale as packed at the plantation, if such bale is imported without any change other than such as is occasioned by sampling, or for the purpose of transportation, and reaches the hands of the consumer in that condition, through the ordinary channels of commerce; and duties cannot be assessed according to the proportions of the different qualities found in an entire lot, consisting of several bales, as ascertained by an examination of sample bales. 49 Fed. Rep. 228, affirmed. Falk v. Robertson, 11 Sup. Ct. Rep. 41, 137 U. S. 225, distinguished.

2. SAME—HOW QUALITY DETERMINED.

The 85 per cent. clause does not refer merely to size and fineness, but to size, fineness, and weight.

Appeal from the Circuit Court of the United States for the Southern District of New York.

At Law. Application to the circuit court by Blumlein & Co., importers, under the provisions of section 15 of the act of congress ·of June 10, 1890, entitled "An act to simplify the laws in relation to the collection of the revenues," for a review of the decision of the board of United States general appraisers at the port of New York affirming the decision of the collector in the classification for ·duty of certain Sumatra leaf tobacco entered at said port by the importers on June 30, 1890. The decision of the board of appraisers was reversed. 49 Fed. Rep. 228. The government appeals. Affirmed.

For decision on a motion for further return of the board of appraisers, see 45 Fed. Rep. 236.

James T. Van Rensselaer, Asst. U. S. Atty., for appellant.
W. Wickham Smith, for appellees.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. On June 30, 1890, Blumlein & Co. imported from Amsterdam, into the port of New York, 37 bales of unstemmed Sumatra leaf tobacco, consisting of three separate plantation lots, containing 10, 18, and 9 bales, respectively. The tariff act of March 3, 1883, (22 St. at Large, p. 503; Heyl. Tariff Ind. pars. 246, 247,) which was at that time in force, provided for duty on tobacco as follows:

"246. Leaf tobacco, of which 85 per cent. is of the requisite size, and of the necessary fineness of texture, to be suitable for wrappers, and of which more than one hundred leaves are required to weigh a pound, if not stemmed, seventy-five cents per pound; if stemmed, one dollar per pound. 247. All other tobacco in leaf, unmanufactured, and not stemmed, thirty-five cents per pound."

To the method of examining and weighing the tobacco adopted in this case, many objections were interposed, which have been argued at great length; but, in the view we take of the construction to be given to the statute, such objections need not be passed upon, nor need the methods of examining and weighing be referred to in this opinion, otherwise than incidentally. As a result of such examination the collector decided that, of tobacco such as is described in paragraph 246, above quoted, there was:

| | |
|---|---:|
| In the lot of 10 bales | 20% |
| In the lot of 18 bales | none |
| In the lot of 9 bales | 60% |

—And of the kind described in paragraph 247:

| | |
|---|---:|
| In the lot of 10 bales | 80% |
| In the lot of 18 bales | 100% |
| In the lot of 9 bales | 40% |

Duty was assessed upon 20 per cent. of the lot of 10 bales, and on 60 per cent. of the lot of 9 bales, at 75 cents per pound, and on the residue at 35 cents per pound. The importers appealed to the board of general appraisers, protesting that the entire importation was subject to duty only at 35 cents per pound. Upon the expressed ground that the questions raised were pending in the

courts, the board of general appraisers, pro forma, affirmed the collector's assessment, without discussing the merits. The importers thereupon appealed to the circuit court, which reversed the decision of the board and of the collector, and directed that the tobacco should be classified for duty under paragraph 247. The government has appealed to this court.

The report of the board of general appraisers finds as a fact that "the importation was Sumatra tobacco, running about the same through the bale, with the usual differences in weight and texture that occur in Sumatra tobacco." One bale in ten of each plantation lot was designated for examination by the collector, and, as the board finds:

"The examination was made by drawing ten hands from each bale, [so designated.] These hands were then weighed, and the number of leaves to each hand was counted, and the percentages were calculated according to a table authorized and adopted by the department. Where they ran over 100 leaves to the pound, they were returned for duty at 75 cents per pound, and the remainder at 35 cents per pound. If, out of the ten hands, seven of them were found to run over 100 leaves to the pound, seven tenths of the bale was returned for duty at 75 cents per pound, and three tenths at 35 cents per pound."

From the proof in this case, and in another now before this court, it appears that, when this kind of tobacco is packed at the place of production, the leaves are first tied together in packages called "hands." The number of leaves in the hand varies. Sometimes the hand contains less than 20, sometimes more than 50. But the general average of leaves is about 35 to 40. From six to seven hundred of these hands are then packed in a bale, which is covered with "bass,"—a species of split palm,—and in that condition shipped to Holland. There, when sold to outside buyers, the bass is covered by an outer wrapper of rush or cloth, and in that condition the bale is bought and sold in the markets of the world. Except for such opening as is necessary to admit of a proper commercial examination of the tobacco, after which examination the hands which have been withdrawn are replaced, and the bale closed up again, these bales, so far as appears, are unbroken until the tobacco, through ordinary channels of commerce, reaches the hands of the consumer. A bale varies in weight from about 160 to 190 lbs.

Conceding, for the purposes of the argument, that the examination of the customs officers was sufficient to give an accurate knowledge of the contents of every bale,—and that is the utmost the government can claim for its examination,—it is apparent that the result is an ascertainment of the percentage of tobacco of the higher grade (that of paragraph 246) in each bale, and in the entire lot. It is contended for the government that thereupon, although there is no actual separation of the tobacco, the collector may constructively separate it, mentally grouping all the higher grade tobacco into one lot, and all the lower grade tobacco into another, and treating the entire importation as if it had come into the port of entry in packages, some of which contained 100 per cent. of one grade, some 100 per cent. of the other, and none of which contained any mixture of

both grades. In our opinion the statute does not authorize any such method of classification. It plainly contemplates the importation of tobacco of mixed grades, and provides that when it is thus mixed, and 85 per cent. of it is of the higher grade, such mixed lot shall pay 75 cents per pound on all tobacco therein contained, whether of higher or lower grades. If the lot does not contain 85 per cent. of the higher grade, the entire lot is to pay the lower duty. The tariff does not impose the higher rate of duty upon all tobacco of the requisite size, fineness, and weight, but upon "tobacco of which 85 per cent." is of the higher grade. So much is perfectly plain upon inspection of the statute. When congress provides for the ascertainment of a rate of duty by the calculation of a percentage, the conclusion is irresistible that there is to be some base number, of which the percentage is to be found. The only difficulty is the determination of what that base number is to be, or, in other words, what is the unit of leaf tobacco which is to be subjected to the percentage test. It has been suggested that either each entire importation, or each separate plantation lot of which it is composed, should be taken as the unit. But the aggregation of bales into plantation lots and larger groups imported together is fortuitous, and not commercially permanent. They nay be sold as entire lots, but need not be. So long as the individual bales are unbroken, they may be segregated into smaller groups, and so sold, as readily, no doubt, as if the original group included in a single entry were itself unbroken. Certainly, congress did not intend that a merchant could import, even from a single plantation, 70 bales entirely composed of the higher grade tobacco, and 30 bales entirely composed of the lower grade, at the lower duty for the whole, when the 70 bales, without repacking, or any change of condition, would be as commercially salable at the full market rate as if they had been separately imported. It seems plain that neither the entire entry nor the plantation lot is the unit.

Commercially speaking, the aggregation of leaves of tobacco into the bale, however, is permanent. The package thus formed remains unbroken, as in the course of trade it passes from hand to hand till it reaches the consumer. To that unit (the bale) any importation of tobacco can be reduced without difficulty. Below that unit it cannot be reduced without commercially changing its condition. Tariff acts, as the supreme court has repeatedly held, are concerned with trade and commerce. They are presumed to be framed after a careful examination of commercial conditions, and are to be interpreted in the light which a knowledge of those conditions affords. When, therefore, we find congress providing that the rate of duty on any commodity shall be regulated by an ascertainment of the percentage of a particular grade of that commodity, present in some aggregation of its different grades, which aggregation congress does not define, well-settled rules of construction indicate that such aggregation or unit is the one recognized in the commercial world as the standard, and that, for tobacco, is the bale. There is nothing in the decision of the supreme court in Falk v. Robertson, 137 U. S. 225, 11 Sup. Ct. Rep. 41, which conflicts with this

interpretation of the statute. The aggregation of leaf tobacco before the court in that case was not a commercial bale. Two different grades of tobacco, carefully separated from each other by strips of paper or cloth, were inclosed in a single package, which was in one sense a bale, but which certainly was not such a bale as was known to trade and commerce. Therefore that court held that "the unit is not the bale, [which was before them,] but it is the separated quantity of such leaf tobacco. That quantity stands, for the purposes of duty, as if it had been imported in a bale which contained nothing but itself. By the method of packing, the wrapper tobacco and the filler tobacco remained entirely distinct. The association of them in the bale was evidently only for the purpose of avoiding the higher duty imposed upon the superior tobacco. This association was to be dissolved the moment the bale was opened in the United States, because the two grades of tobacco sold for different prices in the market." This does not apply, however, to bales like these imported by the petitioner, which had been properly packed in the usual way in Sumatra, with no separation of grades, without fraud, or attempt to evade the customs laws of this country, which had not been repacked in Holland, and which could only be separated into grades by a complete breaking up and destruction of the bale as a commercial unit. We find no warrant in the Falk Case for the contention that the contents of commercial bales can be mentally segregated by the collector, and treated as if the component materials had come into this country in different packages. Nor do we find in the statute any support to the proposition that the percentage is to be taken of each individual leaf. The paragraph does not read "tobacco leaves, of which 85 per cent. is," etc., but "leaf tobacco, of which 85 per cent. is," etc; and to hold that congress intended to require an examination so exhaustive as to determine the percentage of available surface on each leaf is absurd. The labor would be enormous, and the result of such examination would, as the evidence shows, destroy the commercial value of the importation.

In the case at bar none of the bales examined contained 85 per cent. of the higher grade. The collector was satisfied from his examination that the bales not examined conformed in all respects to the selected sample bales, and there is nothing before us to show that any of them contained the requisite percentage. None of the tobacco, therefore, came within the provisions of paragraph 246, or the decision of the supreme court in the Falk Case; for upon examination there was not found any "separable and separated quantity" of leaf tobacco, of which it could be said that 85 per cent. was of the requisite size, fineness, and weight to be dutiable at 75 cents per pound.

The appellant further contends that the 85 per cent. clause refers only to size and fineness. We do not so read the statute. Though awkwardly expressed, its evident meaning is that leaf tobacco, 85 per cent. of which is of the requisite size, fineness, and weight, is dutiable at 75 cents per pound.

The decision of the circuit court is for these reasons affirmed.