In re ROSENWALD et al.

(Circuit Court, S. D. New York.　January 6, 1894.)

CUSTOMS DUTIES—CLASSIFICATION — SUMATRA LEAF TOBACCO UNSTEMMED—EXAMINATION OF.

Certain Sumatra leaf tobacco, unstemmed, imported from Bremen, Germany, June 25, 1890, consisting of fifty-four bales, packed in the usual way, and divided into seven plantation lots, of which merchandise nine bales, being one in six of the whole importation, and in two instances two bales from each plantation lot, were examined by the United States examiner and appraiser at the port of New York by opening each of the nine representative bales, and drawing from different parts of each bale ten "hands" of the tobacco, carefully examining such hands as to fineness of texture and the quality of the tobacco, weighing each of such hands to ascertain where the leaves of the tobacco ran more than 100 to the pound or less, the classification of the merchandise by the collector and the liquidation of the entry being based upon the percentages of tobacco showing more or less than 100 leaves to the pound as applied to the sample bale, and also to the entire plantation lot represented by such bale or bales. All the percentages of tobacco thus shown to be of leaves requiring more than 100 to weigh a pound were assessed for duty by the collector at 75 cents per pound, under the provisions of Schedule F (Tariff Ind., New, par. 246) of the tariff act of March 3, 1883, and all the percentages showing leaves running less than 100 to the pound were assessed for duty at 35 cents per pound, under the same schedule and act, (paragraph 247.) Claimed by the importers' protest that there had been no legal examination of the tobacco sufficient to show that any part thereof was properly dutiable at 75 cents per pound, and that, consequently, all of the importation should bear a duty of only 35 cents per pound, under Tariff Ind., New, par. 247. The board of United States general appraisers affirmed the classification by the collector. _Held_, that the decision of the collector and of the board of general appraisers was erroneous, and that the examination of the tobacco was not sufficient to show any bale thereof to be dutiable at 75 cents per pound, and that, as a consequence, the whole of the importation should be subject to duty only at 35 cents per pound.

## At Law.

Appeal by the importers from a decision of the board of United States general appraisers affirming the decision of the collector in the classification for customs duties of certain Sumatra leaf tobacco, unstemmed, imported into the port of New York, June 25, 1890. The examination of the tobacco by the United States examiner and appraiser was as above set forth in the syllabus to this case. The provision of the tariff act of March 3, 1883, under which the collector classified a part of the tobacco for duty, was in Schedule F. (Tariff Ind., New, par. 246,) as follows: "246. Leaf tobacco, of which eighty-five per cent. is of the requisite size and of the necessary fineness of texture to be suitable for wrappers, and of which more than one hundred leaves are required to weigh a pound, if not stemmed, seventy-five cents per pound; if stemmed, one dollar per pound." The provision under which the importers claimed in their protest was paragraph 247 of the same schedule, as follows: "247. All other tobacco in leaf, unmanufactured and not stemmed, thirty-five cents per pound." The testimony of the United States examiner was taken in the circuit court before a referee, under order of the court, and it was afterwards stipulated by counsel for the importers that all the leaves of the tobacco in the ten hands from each of the nine representative bales of tobacco examined were of the requisite size and fineness of texture to be suitable for wrappers, and that the percentages of light and heavy leaves (namely, leaves running more than 100 to the pound and less) were correctly given by the examiner. The testimony was also taken in behalf

of the government of several experienced dealers in the wholesale tobacco trade, showing that the examination made by the government officer was fully as thorough as the examination of similar unstemmed Sumatra leaf tobacco upon purchases and sales at wholesale in the trade dealing in that merchandise at the time of the passage of the tariff act of March 3, 1883, and since. The trade testimony also showed that the withdrawal of even 25 to 50 hands of tobacco from a bale, which commonly contained from 600 to 700 hands, would injure the commercial value of the bale as an original package. It appeared also that there was no transaction known to the tobacco trade where the character of the merchandise depended upon 85 per cent. thereof having certain requisites of size, fineness, and weight. No testimony was offered either before the board of general appraisers or in the circuit court in support of the importers' contention. On the trial in the circuit court it was contended by the United States attorney that the record and evidence showed that all the requirements of law in relation to the examination and inspection of this merchandise had been complied with; that every bale of the tobacco, upon entry, had been separately weighed by the United States weighers, and returns of such weight, giving the gross and tare, had been regularly made by such weighers; that more than one package in ten of the merchandise, namely one package in six, had been designated for examination by the collector, under section 2901 of the United States Revised Statutes, and was a full compliance with that provision of the law, the sending of any further packages of the merchandise for examination resting within the sound discretion of the collector, and the exercise of such discretion by an officer of the government being presumably correct, (citing Arthur v. Unkart, 96 U. S. 121;) that the examination of the tobacco by the examiner in drawing ten hands from each of the nine representative bales, as shown by the testimony and admitted by the stipulation, was thorough, as far as the hands and the leaves examined by him were concerned, and that the percentages of weights returned by the examiner in accordance with a table prepared for the use of such officers by the customs department of the government were correctly and truly given; that such examination of the merchandise, being equivalent to that usually made in trade, was sufficient to indicate the character of all the tobacco in the importation, (citing Sampson v. Peaslee, 20 How. 571; Yznaga v. Peaslee, 1 Cliff. 493; article 449, treasury regulations of 1884.) It was also claimed that the sufficiency of the examination of this tobacco was res adjudicata in this court, (In re Blumlein, 49 Fed. 232, per Wheeler, J.,) and that such decision of Judge Wheeler had not been reversed by the circuit court of appeals, which affirmed the judgment of the circuit court in that case, and did not overrule his finding that the examination of the tobacco was sufficient. U. S. v. Blumlein, 5 C. C. A. 142, 55 Fed. 383. The United States attorney also cited numerous decisions of the treasury department, running back a number of years, showing the continuous practice of determining the dutiable characteristics of merchandise by samples of representative packages, notably treasury decisions, synopsis 8299, as to the requisite examination of leaf tobacco; synopsis 3579, as to the tare of sugar; synopsis 4932, as to the tare on bales of hay; synopsis 5284, that Sumatra tobacco was to be allowed schedule tare because of easy damage to the leaf; synopsis 2658, weight of cigars to be ascertained by weighing two boxes in ten; synopsis 1664, tare by percentage on sugar in kegs; synopsis 3579, tare by representative packages; treasury regulations of 1884, art. 1467, as to determining weight of railroad iron from average; also section 2915, Rev. St. U. S., as to samples of packages of sugar in order to ascertain the true quality thereof; and article 979 of treasury regulations of 1884, relating to the sampling of sugar for examination and classification,— and it was argued that if the classification of sugar under the tariff act of March 3, 1883, which provided for different specific rates on sugars of different standards, covering a wider range of duties than that provided for leaf tobacco, could be determined from samples of at least one in ten, the determination as to the character and weight of leaf tobacco could be ascertained in like manner from a practical and commercial examination of not less than one package in ten. It was contended that the government was entitled to duties at the rate of 75 cents per pound on all of the tobacco

contained in three of the plantation lots, where the examination of the sample bale indicated that 85 per cent. or more of the tobacco was of the requisite size, fineness, and weight to be suitable for wrappers, under the provision of said Tariff Ind. (New,) par. 246. In behalf of the importers it was argued that the examination was entirely insufficient and illegal, and that all of the tobacco was dutiable only at 35 cents per pound.

Edward Mitchell, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty.

Curie, Smith & Mackie, (William Wickham Smith, of counsel.) for importers.

LACOMBE, Circuit Judge. I am not satisfied that the examination given was sufficient to answer the requirements of the statute. It should be such as to determine whether the tobacco has or has not the distinctive features which place it in one or other of the paragraphs imposing duty. About one-sixtieth of each bale was examined, with this result:

| Plantation Lots. | Length. | Color. | Mks. | Bales Ordered for Examination. | Percentage. | |
|---|---|---|---|---|---|---|
| | | | | | 35c. | 75c. |
| 2578/2589 | Deli | Lankat | SL 1 | 2574 | 70 | 30 |
| " | | " | | 2584 | 50 | 70 |
| 2590/2593 | | " | SS 1 | 2590 | 10 | 90 |
| 2594/2596 | | " | SSL 1 | 2596 | 30 | 70 |
| 2597/2600 | | " | B 1 | 2600 | 20 | 80 |
| 2601/2612 | Deli | my/a | S 1 | 2602 | 80 | 20 |
| " | | " | | 2612 | 10 | 90 |
| 2613/2616 | | " | SL 1 | 2616 | | 100 |
| 2617/2626 | | " | SS 1 | 2626 | 10 | 90 |

There appear here too great variances, even in the tobacco from the same plantation, to warrant the assumption that the other 59-60 of the examined bale, as well as the contents of the unexamined bales, contain tobacco of both grades in the proportions found to exist in the trifling amount examined. It will not do to say that the examination was such as a merchant makes when buying tobacco, because the merchant in that case is looking only for such distinguishing characteristics as are known to trade. The statute has prescribed a duty test for tobacco wholly unknown to trade, and, to determine whether imported tobacco possesses the noncommercial characteristics which subject it to a higher duty, the examination should be full enough to insure accuracy, which this examination seems to have failed to do.

Decision of the appraisers reversed. All should be reliquidated at 35 cents, as the government has not by competent proof shown that any single bale of it was 75-cent tobacco.