### UNITED STATES v. ROSENWALD et al.

(Circuit Court of Appeals, Second Circuit. March 5, 1895.)

#### No. 18.

1. CUSTOMS DUTIES—CLASSIFICATION OF LEAF TOBACCO — UNIT OF CLASSIFICATION.

In determining the classification of leaf tobacco under paragraph 246 of the act of March 3, 1883, the unit to which the percentage test is to be applied is the commercial bale. U. S. v. Blumlein, 5 C. C. A. 142, 55 Fed. 383, followed; Falk v. Robertson, 11 Sup. Ct. 41, 137 U. S. 225, and Erhardt v. Schroeder, 15 Sup. Ct. 45, 155 U. S. 124, distinguished.

2. SAME—SUFFICIENCY OF EXAMINATION BY COLLECTOR—BURDEN OF PROOF.

The burden is not upon the government to show that the collector's classification is correct, but the presumption is in favor of its correctness, and the burden is upon the importer to show that it is not correct; and this burden is not sustained by the fact that the collector's examination was only of 10 hands of tobacco, drawn from representative bales, nor by showing that a method was pursued which was wholly inadequate to ascertain what percentage in any bale consisted of a higher grade, and that the method was erroneous because it sought to determine the percentage, not by aggregating the leaves in the whole number of hands examined, but by aggregating the hands containing the higher grade. 59 Fed. 765, reversed; Erhardt v. Schroeder, 15 Sup. Ct. 45, 155 U. S. 124, followed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Wallace Macfarlane, U. S. Atty.

Charles Curie, David Ives Mackie, and W. Wickham Smith, for appellees.

Before BROWN, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge.    This is an appeal from an adjudication of the United States circuit court for the Southern district of New York reversing a decision of the board of United States general appraisers which affirmed the decision of the collector of the port of New York as to the classification for duty of certain merchandise imported into the port of New York by the appellees in June, 1890.    59 Fed. 765.    The importation consisted of 54 bales of Sumatra leaf tobacco, unstemmed, 28 bales being the product of one plantation, and 26 of another plantation.    Part of the tobacco was classified and subjected to duty by the collector under that provision of schedule F of the tariff act of March 3, 1883, which reads as follows:

"246. Leaf tobacco, of which eighty-five per cent. is of the requisite size and of the necessary fineness of texture to be suitable for wrappers, and of which more than one hundred leaves are required to weigh a pound, if not stemmed, seventy-five cents per pound."

The rest of the tobacco was classified and subjected to duty under the provision of the same schedule which reads as follows:

"247. All other tobacco in leaf, unmanufactured and not stemmed, thirty-five cents per pound."

The importers, being dissatisfied with the decision of the collector, duly protested, claiming, in substance, that all of the tobacco was dutiable at only 35 cents per pound, because 85 per cent. thereof was not of the requisite size and of the necessary fineness to be suitable for wrappers, and less than 100 leaves were required to weigh a pound.    The board of general appraisers having affirmed the decision of the collector, the importers appealed to the circuit court, and upon that appeal evidence was taken in behalf of the importers and of the government.    That evidence, together with the evidence which was before the board of general appraisers, established the following facts:    The 54 bales comprised 7 different lots of tobacco, each lot representing a different quality. Of these lots 2 contained more than 10 bales each, and the others contained from 3 to 10 bales each.    For the purpose of ascertaining under which of the two provisions the tobacco should be classified, the collector designated for examination 1 bale out of each lot which did not contain more than 10 bales, and 2 bales out of each of the other lots, in all 9 bales.    The examiner opened each bale, and drew indiscriminately from different parts of the bale 10 hands of tobacco.    Each bale contained from 500 to 700 hands, and the hands contained from 12 to 50 leaves.    He ascertained by inspection of the leaves whether the tobacco was of the requisite size and fineness suitable for wrappers.    He then weighed the hands separately, to ascertain whether the leaves ran over or under 100 to the pound, determining the ratio according to a standard of estimate adopted by the treasury department.    Having found all the tobacco in all the hands to be suitable for wrappers, he then divided

the hands into two classes, one consisting of those in which the leaves were more than 100 to the pound, and the other of those in which they were less. So many tenths of the bale as there were hands of the former class were returned as dutiable at 75 cents per pound, and so many as there were hands of the latter class were returned as dutiable at 35 cents per pound. As appears by a stipulation in the record, all the leaves in all the hands thus examined were of the size and fineness of texture suitable for wrappers, and the examiner correctly ascertained the percentages of light and heavy leaves in the hands. As a result of this examination, each lot of bales was classified according to the percentages found and returned in the representative bales examined. Thus, the examiner having reported that one bale, representing a lot of 4 bales, contained wholly tobacco of more than 100 leaves to the pound, all the tobacco in that lot was assessed at 75 cents per pound; having reported that another bale, representing a lot of 10 bales, contained 90 per cent. of tobacco having more than 100 leaves to the pound, and 10 per cent. having less, duty was assessed upon 90 per cent. of the tobacco in that lot at 75 cents per pound, and upon 10 per cent. at 35 cents per pound; and having reported that another bale, representing a lot of 3 bales, contained 70 per cent. of tobacco having more than 100 leaves to the pound, and 30 per cent. having less, duty was assessed on 70 per cent. at 75 cents per pound, and on 30 per cent. at 35 cents per pound. The detailed result of the examination was as follows: Out of one lot of 17 bales, from which 2 representatives bales were opened, the proportion in one bale was found to be 70 per cent. of lower grade and 30 per cent. of higher grade, and in the other bale 50 per cent. of lower grade and 50 per cent. of higher grade. Out of another lot of 4 bales, from which 1 bale was opened, the proportions were found to be 10 per cent. of lower grade and 90 per cent. of higher grade. Out of another lot of 3 bales, from which 1 bale was opened, the proportions were found to be 30 per cent. of lower grade and 70 per cent. of higher grade. Out of another lot of 4 bales, from which 1 bale was opened, the proportions were found to be 20 per cent. of lower grade and 80 per cent. of higher grade. Out of another lot of 12 bales, from which 2 bales were opened, in one bale the proportions were found to be 80 per cent. of lower grade and 20 per cent. of higher grade, and in the other, 10 per cent. of lower grade and 90 per cent. of higher grade. Out of another lot of 4 bales, from which 1 bale was opened, all the tobacco was found to be of the higher grade. Out of another lot of 10 bales, from which 1 bale was opened, the proportions were found to be 10 per cent. of lower grade and 90 per cent. of higher grade.

Upon this evidence the circuit court adjudged that the classification of the collector was erroneous, and that all the tobacco should have been subjected to duty at 35 cents per pound. This decision proceeded upon the theory that the examination upon which the classification was based was insufficient, and did not show that any single bale of the tobacco was of a character to entitle it to be classified for duty at 75 cents per pound.

The provision of the tariff act imposing the 75 cents per pound duty has been considered in several adjudications. The principal subject of discussion has been in respect to the unit for the computation of the 85 per cent. In Falk v. Robertson, 137 U. S. 225, 11 Sup. Ct. 41, tobacco was imported in bales, each of which contained a quantity of Sumatra leaf tobacco answering the description of the tariff provision, except that it formed only about 83 per cent. of the contents of the bale. The rest of the bale consisted of inferior leaf tobacco, which was separated from the other tobacco by strips of paper or cloth. The two kinds being thus readily separable on the opening of the bale, the court held that the 83 per cent. of the contents of the bale was dutiable under the provision, and that the contents of the bale as a whole were not dutiable at 35 cents per pound. In the opinion the court said:

"In the present case, the carefully separated and distinguishable quantity of tobacco in the bale which was of the specified size, fineness, and weight was the whole of it,—that is, one hundred per cent.,—and more than eighty-five per cent. of that size, fineness, and weight; and all of it fell under the description of what was dutiable at seventy-five cents per pound. The unit is not the bale, but is the separated quantity of such leaf tobacco. That quantity stands, for the purpose of duty, as if it had been imported in a bale which contained nothing but itself. By the method of packing, the wrapper tobacco and the filler tobacco remain entirely distinct. The association of them in the bale was evidently only for the purpose of avoiding the higher duty imposed on the superior tobacco. This association was to be dissolved the moment the bale was opened in the United States, because the two grades of tobacco sold for different prices in the market."

In Re Blumlein, 5 C. C. A. 142, 55 Fed. 383, the provision was under consideration by this court after the decision in Falk v. Robertson, and it was determined that the 75-cent duty is applicable to that grade of unstemmed leaf tobacco of which 85 per cent. of the commercial bale is of the requisite size and fineness suitable for wrappers, and contains more than 100 leaves to the pound. The court was of the opinion that the unit contemplated by congress was that aggregation of leaves in the permanent commercial form in which leaf tobacco is imported and bought and sold, which is the bale; and that Falk v. Robertson was not inconsistent with this conclusion, because the observations in that case in respect to the bale not being the unit were directed to a bale prepared only for the purposes of avoiding duty, and not to a commercial bale. Since the decision of In re Blumlein, the supreme court has again considered the provision in Erhardt v. Schroeder, 155 U. S. 124, 15 Sup. Ct. 45. In that case, referring to the question whether the bale was to be treated as the unit, the court used this language:

"The proper answer to this question seems to depend upon the particular circumstances of a given case. It appears in the testimony on both sides in this case that leaf tobacco is divided into two classes, known as the 'wrapper class' and the 'filler class.' * * * If, then, a bale, or other separate and concrete quantity, of leaf tobacco, contained only leaves of such uniformity of character as to be in their collective form of one class, the bale, or other separate collection, would be the unit contemplated in the percentage and weight tests. On the other hand, if the bale contained tobacco of two classes, the unit would be the ascertained quantity of either class. * * * All the tobacco in question in this case, as the evidence on both sides shows, was raised in the same country, and was all of the

class known to the trade as 'wrappers.' Therefore, any bales, or indeed the whole invoice, if it might conveniently be treated as a whole for the purpose, was just such a unit as was indicated by the statute."

We do not understand this adjudication to be antagonistic to the judgment in Re Blumlein, that the commercial bale is to be deemed the unit upon which the percentage of 85 per cent. is to be found. The case was one in which it appeared that out of 429 bales imported, consisting of 13 plantation lots, 30 bales were designated for examination by the collector; that 4 of these lots, containing respectively 10, 27, 20, and 10 bales, were represented in the 10 bales in controversy; and that among the 30 bales designated by the collector was 1 bale from each of the 4 lots. The court below had decided that, there having been examined less than 1 bale out of every 10 of the invoice, the collector had not complied with section 2939 of the United States Revised Statutes, and therefore the exaction of duty was illegal. The court held this section to be permissive, and not mandatory. It became necessary also to determine whether the evidence would have justified a verdict for the importer, and in this view the question was considered whether the testimony in respect to the percentages of higher-grade and lower-grade tobacco tended to show an erroneous classification by the collector. The decision was:

"That the court below was in error in directing a verdict for the importers, and that the judgment of that court ought to be reversed, and the case remanded, with directions to set aside the verdict, and to order a new trial, in order that a jury may pass upon the real character of the tobacco contained in the ten bales withdrawn by the importers."

Incidentally, the court considered certain other questions. It was assumed in the opinion that an examination of all the tobacco in all the bales was not necessary in order to ascertain whether it answered the requisites of the higher grade, and that the examination of a representative quantity, such as 10 hands, in a bale, might be sufficient to determine the grade of the bale. And in respect to such an examination the court said:

"If the character of the tobacco is to be learned from an examination of a representative quantity therefrom, such as ten hands, the hands should be separated, and the statutory tests applied to the general collection of all the representative leaves, irrespective of their casual association in the respective hands."

This statement was prefaced by observations in the opinion which leave no doubt of its meaning, and which were as follows:

"In such a case, if separate hands taken from a bale containing only leaves of one class were treated as units, the result might be an inaccurate conclusion. Doubtless in the hands classed as containing tobacco dutiable at the lower rate there would be leaves having all the requisites of the higher grade, while in the hands ascertained to be taxable at the higher rate would be leaves of the lower grade. This might have the effect of making a division of tobacco of one commercial class into two grades with respect to taxation,—a division which we do not believe to have been contemplated by the statute."

It is to be presumed, unless the contrary is made to appear, that there was a sufficient examination of the tobacco to enable the collector to determine what percentage of the whole was suitable for

wrappers, and composed of more than 100 leaves to the pound. Whenever it is alleged by the importer that the collector has exacted a duty based upon an improper classification of merchandise, the burden of proof is upon him to prove the allegation. Where the classification of merchandise depends upon the existence of specified characteristics descriptive of its qualities, it is to be presumed, in favor of a correct classification, that those characteristics were found by the officers of the customs. These officers "are selected by law for the express purpose of deciding these questions. They are appointed and required to pronounce a judgment in each case, and the conduct, management, and operation of the revenue system seem to require that their decisions should carry with them the presumption of correctness." Arthur v. Unkhart, 96 U. S. 118.

In the present case, as in Erhardt v. Schroeder, the presumption of a valid classification is not overthrown by the fact that the examination was not of all the tobacco in all the bales of the different lots, nor of all the tobacco in the representative bales designated by the collector, nor because it was only of 10 hands from the representative bales; and in this case, as was done by the court in that, the evidence must be considered to ascertain whether the importers have shown that the necessary percentage of higher-grade tobacco was not present in any of the bales in controversy. If there had been an examination of only the most superficial character, it would still be incumbent upon the importers to show that the tobacco was not of the requisite characteristics to support the classification. The only evidence to meet this burden is the testimony and report of the examiner, which shows that a method was pursued which was wholly inadequate to ascertain what percentage in any bale of the tobacco consisted of the higher grade; not only because, as was observed in the opinion of the court below, the variances were too great, "even in the tobacco from the same plantation, to warrant the assumption that the other fifty-nine sixtieths of the examined bale, as well as the contents of the unexamined bale, contained tobacco of both grades in the proportion found to exist in the trifling amount examined," but also because it was sought to determine the percentage, not by aggregating the leaves in the whole number of hands examined, but by aggregating the hands containing the higher grade. Indeed, the protest of the importers proceeded principally upon the ground of an insufficient examination to determine the percentage. The protest contains this statement:

"That no sufficient examination of the tobacco was made to ascertain whether eighty-five per cent. was of the requisite size and fineness of texture to be suitable for wrappers, and whether more than one hundred leaves were required to weigh a pound."

All the hands examined in one bale, a representative bale of a lot of four bales (Nos. 2,613 to 2,616), were found to be wholly composed of the higher-grade tobacco. It may be reasonably assumed, therefore, that the bale and the lot were composed exclusively of the higher grade, and as to this lot the result was not affected by the erroneous method; but, except as to this lot, the evidence does

not supply the necessary data for the computation of the percentage. It is not disputed that all the tobacco in all the hands examined was suitable for wrappers, in respect to size and necessary fineness of texture, but there is no legitimate evidence which enables us to determine whether the requisite percentage did or did not exist in any of the bales in controversy, aside from those wholly composed of the higher grade. So far as appears, the importers may have escaped with payment of less duty upon their importation than was actually due. Because the judgment of the court below can only be sustained upon the theory that the burden was upon the government to show that the classification of the tobacco in controversy was lawful, instead of upon the importer to show the contrary, we conclude that the judgment should be reversed. It is accordingly so ordered.

(March 6, 1895.)

SHIPMAN, Circuit Judge. Inasmuch as the supreme court has held in the Schroeder Case, 155 U. S. 124, 15 Sup. Ct. 45, that the burden of proof was upon the importer to show the incorrectness of the collector's ascertainment of the qualities and characteristics of the tobacco, the decision of the circuit court must be reversed. But the opinion in this case properly affirms the construction of paragraph 246 of the tariff act of March 3, 1883, which was given in the Blumlein Case, 5 C. C. A. 142, 55 Fed. 383. I think, therefore, that, with the reversal, the cause should be remanded to the circuit court, with instructions to direct that the rate of duty should be assessed upon the merchandise in the case in accordance with the principles of that decision. The assignment of errors directly presents the question of the proper amount of duty, if the Blumlein decision is affirmed. The burden of proving the inaccuracy of the qualities of the tobacco with respect to size, fineness, and lightness of weight not having been successfully sustained by the importer, the correctness of the collector's estimate must be assumed; and there are, in my opinion, adequate data in the record and in the customhouse papers to enable the collector to reliquidate with accuracy in accordance with the rule that the commercial bale is the unit of classification. In the Soby Case, 49 Fed. 234, and in the various reliquidations since the Blumlein decision, no difficulty was apparently found in the ascertainment from the customhouse documents of the proper amount of duty in accordance with the court's construction of paragraph 246. In my opinion, it is not to be presumed or supposed hereafter that there is any inherent difficulty in a reliquidation.