## INVALID SECTIONS IN THE NEW MUNICIPAL CODE.

[Superior Court of Cincinnati, sitting in General Term.]

THEODORE HORSTMAN, ON BEHALF OF THE CITY OF CINCINNATI, v. THE CINCINNATI STREET RAILWAY COMPANY.

Decided, April 28, 1903.

*Constitutional Law—Statutes of Limitation—Grants or Franchises—Re-grants of — Retroactive Legislation — Nuisance — Sections 31 and 137, Municipal Code – Act of April 22, 1896—Sections 1777 and 1778, R. S.—Quo Warranto—Injunction.*

1. The latter part of Section 31 of the Municipal Code, passed October 22, 1902, reads as follows :

"All unexpired grants of rights or franchises heretofore made by any municipality, in accordance with the provisions of any statute or act of the General Assembly existing at the time when they were made, and which have been accepted, and where money has been expended in good faith on account thereof, are hereby regranted for such unexpired portions of the respective periods of the original grants, in accordance with the terms and conditions of the same ; any law or part of law to the contrary notwithstanding."

If the proper construction of this part of Section 31 is that it is an attempt on the part of the General Assembly to validate the grant made to the defendant company under the unconstitutional act of April 22, 1896, it is unconstitutional and void, because in violation of Article II, Section 26, of the Constitution of Ohio, which declares that "all laws of a general nature shall have a uniform operation throughout the state " ; and Article XIII, Section .1, of the same Constitution, which declares that " the General Assembly shall pass no special act conferring corporate power. "

2. The part of Section 31 previously referred to can not be upheld as falling within the proviso of Article II, Section 28, of the Constitution, which declares that—

"The General Assembly shall have no power to pass retroactive laws or laws impairing the obligation of contracts, but may by general laws authorize courts to carry into effect upon such terms as shall be just and equitable the manifest intention of the parties and officers, by curing omissions, defects and errors in instruments and proceedings arising out of their want of conformity with the laws of this state."

3. In Section 137 of the Municipal Code, passed October 22, 1902, it is declared that—

"No action, as provided in Sections 1777 and 1778, to enjoin the performance of a contract or the payment of any bonds heretofore or hereafter entered into or issued by a municipal corporation, shall be brought or maintained unless such action is commenced within one year from the date of such contract or bonds, and this provision shall apply to pending cases."

If by the proper construction of this section it is applicable to the present case, it is to that extent invalid.

4. The principle is well settled that while the Legislature may shorten the time within which suits to enforce existing causes of action may be commenced, yet a reasonable time must be given by the new law for the commencement of the suit before the bar takes effect; and *a fortiori* is it beyond the power of the Legislature to shorten such period of time, make the law retroactive in its operation, and order the dismissal of cases pending at the time the law is passed.

5. The constitutionality of an act depends upon its operation and effect, and not upon the form it may be made to assume; and if the effect of Section 137, as above set forth, is to dismiss the present case, then so far as the City of Cincinnati and the taxpayers therein are concerned, the section makes valid a grant made to the defendant under an unconstitutional law, as neither the city nor the taxpayers therein have any right to be heard in court to question its validity. In such event, while the section in form would be a statute of limitation, its effect would be to make a grant, as is done in Section 31.

6. The unlawful laying of tracks and the operation on the same in the streets of a city is a public nuisance, and no statute of limitation runs against a public nuisance.

7. The rights conferred by Section 1777 and Section 1778 are radically different from the rights conferred by Section 6762 and Section 6763, relating to proceedings in *quo warranto*.

SMITH, J.; DEMPSEY, J., and FERRIS, J., concur.

This case was before us on a previous occasion on a demurrer to the answer, which raised the question whether the law popularly known as the "Rogers Law," under which the defendant asserts its right to act in the manner complained of by plaintiff, is a constitutional enactment. The decision of the court was that the law was unconstitutional, and the case remanded to special term for further proceedings. *Horstman* v. *Street Railway Co.,* 12 Ohio Decisions, 756.

Subsequently at special term, by leave of court, the defendant filed an amended answer setting up four defenses in addition to the defense made in the original answer, and the plaintiff having filed demurrers to these defenses, the demurrers were reserved to general term, and the questions raised by the same are now before us for decision.

Preliminary to the argument of the questions raised by the additional defenses set up in the amended answer, counsel for defendant have reargued at great length, both orally and by brief, the question of the constitutionality of the "Rogers Law." Our decision upon that question was the result of careful study, and the

reargument has not tended to disturb our confidence in the correctness of our former conclusions. We believe such conclusions to be unquestionably sound and the argument set forth to sustain them unanswerable.

We proceed, therefore, to the consideration of the new questions raised by the additional defenses set up in the amended answer, and we shall consider them not in the order in which they appear in the amended answer, but rather in-the order which a logical discussion of the questions raised by them would suggest as the most proper.

Subsequently to the decision in this case, declaring the "Rogers Law" unconstitutional, the General Assembly of the state met in special session, pursuant to a call of the Governor, for the purpose of revising the municipal code of the state, and on October 22, 1902, it enacted such revised code which contained in Section 31 the following language:

"Nothing herein contained shall be construed to impair the rights of abutting property owners, where unnecessary or additional burdens are placed upon the streets by operation of any grants herein authorized to be made, and nothing in this act, or any part thereof, shall be construed to impair or enlarge the rights of any corporation now using the streets of any municipality in the state under authority of any law now or hereafter in force; but all unexpired grants of rights or franchises heretofore made by any municipality, in accordance with the provisions of any statute or act of the General Assembly existing at the time when they were made, and which have been accepted and where money has been expended in good faith on account thereof, are hereby regranted for such unexpired portions of the respective periods of the original grants in accordance with the terms and conditions of the same; any law, or part of law, to the contrary notwithstanding."

It is contended by the defendant that the latter part of the section beginning with the words, "but all unexpired grants of rights or franchises heretofore made by any municipality, etc., etc.," confirms and regrants all street railroad franchises previously made under unconstitutional laws and thereby validates the grant made under the "Rogers Law" to the defendant company.

Assuming for the purpose of discussion, without expressing an opinion that such is the effect of this part of Section 31, we are immediately confronted with the question whether the

power to make such a grant is not forbidden to the General Assembly by the Constitution of the state.

The defendant contends that such legislation is constitutional, and bases its contention upon the proposition that "the General Assembly has complete control of the municipal corporations of the state and also of the streets and highways within such municipal limits, so far at least as to make valid grants or regrants directly to and in favor of street railway corporations instead of doing so indirectly through the municipal agencies."

If we admit for the purpose of argument that this proposition generally speaking is sound, yet it is beyond dispute that it is subject at least to two most important limitations.

1. As streets, municipalities and street railroad franchises are all subjects of a general nature, such a grant must be by a law which operates uniformly throughout the state; otherwise it would violate Article II, Section 26 of the Constitution, which declares that "all laws of a general nature shall have a uniform operation throughout the state," and

2. As Article XIII, Section 1 of the Constitution, which declares that "the General Assembly shall pass no special act conferring corporate power" applies to both municipalities and private corporations such as street railroad companies, any grant of street railroad franchises to such companies operating in municipalities must be so generally applicable to municipalities and street railroad companies as not to be a special act conferring corporate power and therefore forbidden by this constitutional prohibition.

The curative provision of Section 31 violates both of these limitations to which we have just referred: "All unexpired grants of rights or franchises heretofore made by any municipality, etc.," under any unconstitutional law are made valid or regranted. Therefore, whether the law under which the street railway grant was made, violated the provision of the Constitution that "All laws of a general nature shall have a uniform operation throughout the state," or whether it violated the provision that, "The General Assembly shall pass no special act conferring corporate powers"; nevertheless, the grant is declared to be valid and binding on the municipality and the people inhabiting the same; and, as the grant under the Rogers Law is invalid, because made under a

law which violated this latter provision of the Constitution, by force of this curative section it becomes valid.

It will be observed that this law has no future operation. It simply regrants all unconstitutional grants *heretofore* made. If it had been given a prospective as well as a retrospective operation, it would be simply a re-enactment of the Rogers Law. As it stands it is a re-enactment of the Rogers Law limited in its operation to the past.

The unconstitutionality of such a law is self-evident. The contention that it is constitutional proceeds upon the theory that the General Assembly controls the Constitution, instead of the Constitution controlling the General Assembly; that an unconstitutional law can be constitutionally vitalized by repassing it; and that a grant made under an unconstitutional law can be made valid by a declaration by the General Assembly that it shall be considered valid.

It might as well be claimed that a false statement can be made true by repeating it, or that a thing which does not exist may be brought into existence by the mere insistence that it shall exist.

The extended arguments in this case assume that the question of the constitutionality of that part of Section 31 which we have been considering is a new question in this state. But it is not. It has been passed upon adversely to the contention of the defendants by our Circuit Court in *Knorr* v. *The City of Cincinnati and Miller et al,* 5 C. C., 609; and this decision was affirmed by our Supreme Court in 27 W. L. B., 64 and 187.

In that case the Board of Public Improvements in Cincinnati awarded a street railroad franchise to Isaac J. Miller, although Simeon M. Johnson was the lowest bidder for the same, on the ground that the consents of the property owners along the route were consents filed for the grant of the franchise to Miller, and to no one else.

Thereupon an action of injunction was begun in the Common Pleas Court of Hamilton County by Knorr, a taxpayer, against the City of Cincinnati and Miller, to enjoin the operation of the franchise by Miller, on the ground that consents when filed inure to the lowest bidder and can not be restricted to any particular bidder.

The common pleas court (Shroder, J.) sustained the contention of plaintiff. *Knorr* v. *Miller et al*, 25 W. L. B., 128.

The case was then appealed to the circuit court. But subsequently to the decision in the common pleas court, and before the case was heard in the circuit court Miller and his associates went to the General Assembly and secured the passage of a curative law validating the grant to him. The law was passed April 10, 1891, and appears in the opinion in the case in the circuit court, 5 C. C., 612, and reads as follows:

"Section 1. That in all cases where, in cities of the first grade of the first class, the council has *heretofore,* by ordinance, established any street railroad route and declared the conditions upon which a street railroad should be constructed and operated upon and along such route, and due publication of a notice has been made calling for proposals to construct and operate such street railroad to be awarded to any corporation, individual or individuals that should agree to carry passengers thereon at the lowest rates of fare, and the proposal of a bidder who obtained and filed the written consents of the owners of the majority of the feet front of property of such street on the line of the route, has been accepted thereon, and an ordinance passed granting to such bidder the franchise to construct and operate such street railroad, and such bidder has accepted the same, and entered into a written contract with such municipal organization to construct and operate such street railroad, said ordinance and grant, contract and franchise shall be deemed and held in all respects to be valid and binding, notwithstanding the submission of another bid at such letting, by a bidder proposing to carry passengers on such route at a lower rate of fare, who failed and neglected to obtain and file the written consents of any of the property owners on the line of said route."

The circuit court held the law to be unconstitutional on the ground that it violated Article XIII, Section 1 of the Constitution, which forbids the passage of any special law conferring corporate power, and this decision was affirmed without report by our Supreme Court. (27 W. L. B., 64 and 187.)

An examination of the record and briefs in that case discloses that the main point relied upon in the attack upon the constitutionality of the law was that it was a special act conferring corporate power, and the briefs in that case read as if they were written for this case. The argument and even the authorities

cited to sustain the law are almost identical with the argument and authorities relied upon in this case.

Only a brief examination of the authorities cited by defendant to sustain the constitutionality of this curative law is necessary to show their inapplicability to the case at bar.

In the case of *Kumler* v. *Silsbee,* 38 O. S., 445, an ordinance of the city of Cincinnati had been passed purporting to authorize Samuel Silsbee, his associates, etc., to lay pipes in the streets of Cincinnati for the purpose of supplying the public with steam heat and power in accordance with the method known as "The Holly System of Steam Heating in cities." Before any step had been taken by Silsbee the act of March 25, 1880 (77 O. L., 83), was passed, which reads as follows:

## "AN ACT

"To authorize municipal corporations to use or grant the use of the streets, avenues, alleys and public places for certain purposes.

"SECTION 1. *Be it enacted by the General Assembly of the State of Ohio,* That any municipal corporation may, by ordinance, use or grant the use of its streets, avenues, alleys, lanes and public places, to lay pipes and drains under the surface thereof, to be used for the purpose of supplying its inhabitants with heat and power upon such terms as such corporation may deem proper.

"SECTION 2. That in all municipal corporations which may have heretofore, by ordinance, authorized the use by any person or corporation of the streets, avenues, alleys, lanes and public places of such municipal corporation for the purpose of laying pipes and drains below the surface thereof to convey and supply its inhabitants heat and power, such ordinance shall be held as valid and binding as if the power in all such municipal corporations to so grant such use of its streets, avenues, alleys and public places has been expressly enumerated in the General Municipal Corporation Act now in force; provided that the councils of such corporations are empowered to regulate by ordinance, at intervals of five years, the price which such person or company may charge for such heat or power.

"SECTION 3. This act shall take effect and be in force from and after its passage."

It will be observed that this statute differs from the statute in the case at bar in two respects: (1) The Legislature had the power in the first instance to have granted the authority which had

been exercised by the city of Cincinnati. There would have been no constitutional objection to such a grant. (2) The statute making the grant was not special, but general, as it operated not alone on past transactions, but also upon transactions in the future.

Upon the first point the court said:

"A statute granting authority to lay pipes for the purposes specified in the streets of municipal corporations would be clearly authorized by the general grant of legislative power *and where a statute does not infringe· upon any constitutional inhibition, the Legislature is the sole judge as to the form it may assume;*"

and upon the second point it said:

"The further claim is made that the statutory provision confers corporate power and being special violates the Constitution, Article XIII, Section 1. But the statute is general and not special. Rev. Stats., 123, note."

In the case of *Louisville Trust Co.* v. *The City of Cincinnati,* 76 Fed. Rep., 296, the city of Cincinnati had, in 1871 and 1872, without authority of law, made certain grants of street railroad franchises to the Cincinnati Inclined Plane Railway Company, which was organized under the steam railway law. Subsequently the Legislature passed a curative law which validated such grants. The law, however, as in the Silsbee case, was one which the Legislature was not forbidden from passing in the first instance; it was not special but general, and operated not only on past grants but also on future grants, the language of the act being:

"Any inclined plane railway or railroad company *heretofore or that may hereafter* be organized under the act of May 1, 1852, shall have power, etc., etc."

The court held such a law not to be a special act conferring corporate power. The difference between that act and the one at bar is manifest.

The cases of *Hinch* v. *City of Cincinnati,* affirmed by the Supreme Court in 31 W. L. B., 252, and *Bode* v. *City,* 5 C. C., 382, and *City* v. *Anderson,* 52 O. S., 600, involved the constitutionality of the curative act found in 90 O. L., 5 and 6.

In *Campbell* v. *Cincinnati,* 49 O. S., 463, the Supreme Court had held that the requirement of Section 1694, Rev. Stats., that ordinances of a permanent nature shall be fully and distinctly read on three different days is mandatory, and that where this statutory rule was dispensed with and a number of ordinances to condemn and improve property were voted upon at the same time without a division of the question, the action was illegal and the assessments made with respect thereto invalid.

To cure the irregularity in such proceedings the law found in 90 O. L., 586, was passed, and was upheld by the courts.

The opinions of the courts are not reported, but they were undoubtedly based upon one or both of two grounds:

1. That the Legislature could in the first instance have dispensed with this formality in the passage of ordinances, and therefore it had the power to subsequently validate any action of the city authorities which had been taken in disregard of this formality.

2. That the legislation was authorized by Article II, Section 28 of the Constitution, which declares that while the General Assembly shall have no power to pass retroactive laws yet it may:

"*   *   by general laws authorize courts to carry into effect upon such terms as shall be just and equitable the manifest intention of parties and *officers,* by curing omissions, *defects* and *errors* in instruments and *proceedings* arising out of their want of conformity with the *laws* of this state."

The principle declared in the so-called bounty cases, decided in *Cass Township* v. *Dillon,* 16 O. S., 391; *State, ex rel Anderson,* v. *Harris et al,* 17 O. S., 608; and *State, ex rel Bates,* v. *Richland Tp.,* 20 O. S., 369, has clearly no application to the case at bar.

The latter case may be taken as a type of all of them. In that case the General Assembly passed an act which provided:

"That the commissioners of the several counties, the trustees of the several townships, and the city councils of the several cities of this state are hereby authorized and required to issue to each reenlisted veteran volunteer, who has been heretofore credited upon the quota of such county, township or city, or any ward of such city, under any requisition of the President of the United States for volunteers during the late rebellion, and who has not received

any local bounty, upon said re-enlistment, a bond, for the sum of one hundred dollars, bearing six per cent. interest, redeemable, etc."

It was contended that the law was unconstitutional because retrospective. In disposing of this objection, White, J., said:

"This objection was made to another statute belonging to the same class as those now in question, in the case of *The State, ex rel Anderson,* v. *Harris et al* (17 O. S., 608), and was held to be invalid. It was said in that case that the validity of the law did not depend on the existence of power in the Legislature to create a contract between the county and the volunteers; nor was it an act which impaired vested rights or the validity of contracts. The authority for the act was found in the general grant of legislative power *which includes taxation* in all its forms, both general and local unless restrained by other parts of the Constitution.

"The duty imposed upon the municipal subdivision of the state does not arise out of any contract relation supposed to exist between them and the volunteers, *but is devolved upon them by the Legislature in the exercise of the taxing power of the state and of the power of apportioning taxation.*"

As it is not and could not be contended that the curative law in the case at bar could be sustained under the taxing power of the state, these bounty cases have no applicability in this case.

In the case of *State, ex rel,* v. *Hoffman,* 35 O. S., 435, a municipal corporation in exercising the power of assessment to pay for a public improvement levied the assessment upon property which was not subject to be charged therewith, and in a suit brought to enforce the assessment the property thus charged was ordered to be sold to pay the same. Subsequently the Legislature passed an act to relieve the property thus ordered to be sold by requiring the amount improperly charged thereon to be paid out of the funds of the corporation, and the legislation was sustained on the principle declared in *The State, ex rel,* v. *The City of Circleville,* 20 O. S., 362, one of the so-called bounty cases to which reference has previously been made. As that case was sustained on the ground that the power exercised was a proper exercise of the taxing power of the state, it is clear that *State, ex rel,* v. *Hoffman* can be of no assistance to defendant in sustaining the curative law now under examination.

A number of cases decided in the federal courts and of which *New Orleans* v. *Clark,* 95 U. S., 544, and *Read* v. *Plattsmouth,* 107 U. S., 568, are typical, have been cited by the defendant as establishing a principle which sustains the present curative law; but an examination of those cases will show that the principle has no such application.

In the former case bonds were issued for work done in the interest of a city and the bonds being found illegal because of some irregularity in their issue they were legalized by an act of the Legislature. The United States Supreme Court upheld the act on the same ground that the decision in the bounty cases was based, viz.: that the power of the Legislature to pass such an act fell within the taxing power of the state; and upon the further ground that the bonds, "were issued for work done in its (the city's) interest, of a nature which the city required for the convenience of its citizens, *and which its charter authorized.* It was therefore competent for the Legislature to interfere and impose the payment of the claim upon the city. The books are full of cases where claims, just in themselves, but which from some irregularity or omission in the proceedings by which they were created, could not be enforced in the courts of law, have been thus recognized and their payment secured. The power of the Legislature to require the payment of a claim for which an equivalent has been received, and from the payment of which the city can only escape on *technical grounds,* would seem to be clear."

In *Read* v. *Plattsmouth,* 107 U. S., bonds were without authority of law issued by a city in Nebraska, for the purpose of raising money wherewith to construct a high school building within her limits. They were sold and the proceeds applied accordingly. Subsequently the Legislature legalized the proceedings of the city.

In upholding the legislation, Mr. Justice Matthews placed the decision upon the same ground as that upon which *New Orleans* v. *Clark* was decided, and in considering the objection that the law was a special law conferring corporate power said:

"As the city of Plattsmouth was bound by force of the transaction to repay to the purchaser of its void bonds the consideration received and used by it, or a legal equivalent, the statute which recognized the existence of that obligation, and by confirming the

bonds themselves, provided a medium for enforcing it according to the original intention and promise can not be said to be a special act conferring upon the city any new corporate power. *No addition is made to its enumerated or implied corporate faculties; no new obligation is in fact created. The language of the Constitution forbidding special legislation of that description evidently refers to grants of authority to be exercised by the body itself and in the future* and a consideration of the evil to be remedied by the prohibition, will confine it to grants of that character, and will not include a statute like that now under discussion."

The principle declared in these cases is that where the state or a subdivision of the state has received money under an unconstitutional law, and issued bonds for the payment of the same, an implied contract arises to repay the same, and the General Assembly by a subsequent law may afford the holders of the bonds a remedy by which they may recover back the money which the state or its subdivision holds. As said by Justice Matthews in *Read* v. *Plattsmouth* :

"The act in question so far as it relates to the bonds in suit does not confer any corporate power upon the city in the sense of the Constitution of the State. The statute operates upon the transaction itself, which had already previously been consummated, and seeks to give it a character and effect different in its legal aspect from that which it had when it was in force."

But if the act *"grants authority to be exercised by the body itself and in the future,"* then the act is unconstitutional as being a special act conferring corporate power.

In the case at bar the city of Cincinnati has received no money or property of the defendant for which it has given no equivalent, and even if it had, the act seeking to validate this street railroad franchise grants corporate powers to both the city and the defendant company to be exercised "in the future." Clearly this line of decisions can be of no assistance to the defendant.

The latest decision which it is claimed falls within the line of decisions just referred to is that of *Life Ins. Co.* v. *Bd. of Com'rs, Cuyahoga County,* 106 Fed., 123, in which the constitutionality of the act which undertook to validate the bonds issued for armory purposes was upheld. The same question is now before this court in another case, and we, therefore, express no opinion now upon the

question thus raised. But if the case of *Life Ins. Co.* v. *Bd. of Com'rs, Cuyahoga County* was correctly decided, it was because the facts of the case made the principle in *New Orleans* v. *Clark* and *Read* v. *Plattsmouth* applicable. As we have seen that that principle is not applicable in the case at bar the decision in *Life Ins. Co.* v. *Bd. of Com'rs, Cuyahoga County* has no application to this case.

The statement previously made that the city has received under the grant made to the defendant under the Rogers Law no money or property for which it has not given an equivalent, is undoubtedly true. The money expended by the defendant has been in laying and relaying its tracks, which still belong to it, and if it has spent any money in constructing or reconstructing power houses, such work is upon its own property and does not belong to the city. Whatever money has been paid for license fees by the defendant to the city has been paid for the privilege of running its cars in the past and collecting the revenues from the same, and the defendant has received under the grant in this way far more money than it has paid to the city. It is more than repaid for its payment to the city by way of license fees.

But even if the contrary were true, and the city had received certain property or money from the defendant for which it had received no equivalent—while such a state of facts might warrant the Legislature in the passage of a curative law enabling the defendant to recover back this property or money, it would not warrant the Legislature in passing a curative law, the effect of which was to confer corporate power upon the city to be exercised in the future—in this case a period of over forty years.

Aside from any decided case sustaining the validity of the curative law under consideration, the defendant relies upon the latter part of Article II, Section 28 of the Constitution which declares that—

"The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may by general laws authorize courts to carry into effect upon such terms as shall be just and equitable the manifest intention of the parties and officers by curing omissions, defects and errors in instruments and proceedings arising out of their want of conformity with the laws of this state."

It will be observed that the main purpose of this section is to forbid the passage of retroactive laws or laws impairing the obligation of contracts; and that it is only in the latter part of the section that the proviso appears which permits the passage of certain curative laws.

But the very language of this proviso is opposed to the contention of the defendant in this case. The Legislature is granted power to cure "omissions, defects and errors in instruments and proceedings arising out of their want of conformity with the *laws* of the state," but not those arising out of their want of conformity with the *Constitution* of the state, and yet the construction of this section which the defendant insists upon would require the section to read as if it read "arising out of their want of conformity with the laws and Constitution of the state."

It is needless to say that if the section were given such a construction, it would be the one se tion in the Constitution which would destroy the vitality of all the others. It would have been unnecessary to adopt the other sections; because whenever it was found that the Legislature had violated one of the provisions of the Constitution, the violation could be cured by passing another law of the same effect as the law first passed and sustaining the second law by the priviso in Article II, Section 28.

The mere fact, too, that money has been expended under an unconstitutional law does not add any force to a curative law. If it did, framers of the Constitution have blundered in not adding to most of the sections a proviso that the section shall be valid even if money has been expended under a law passed in violation thereof.

Furthermore, if the mere expenditure of money can add force to a curative law, then the door is wide open to legislate in most cases in disregard of the Constitution by first passing an unconstitutional law, then expending money under it, and then repassing the law and reciting that if money has been expended under the former law it shall be held to be constitutional.

Generally speaking it is not difficult to distinguish between what are and what are not curable defects in legislation. The rule may be stated by the following citations from Cooley on Constitutional Limitations (6th Ed.), 457:

"The rule applicable to cases of this description is substantially as follows: *If the thing wanting* or which has failed to be done, and which constitutes the defect in the proceedings, is something *the necessity for which the Legislature might have dispensed with by prior statute,* then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by some subsequent law.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"If the contract is one which the Legislature *might originally have authorized,* the case falls within the principle laid down and the right of the Legislature to confirm it must be recognized.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"But the healing statute must in all cases be confined to validating acts, which the Legislature might previously have authorized. *It cannot make good retrospective acts or contracts which it had and could have no power to confirm or sanction in advance."*

See, also, to the same effect Black on Constitutional Law, Section 487; *Strange* v. *Dubuque,* 6 Iowa, 303; I. Thompson's Com. on Law of Corporations, 490.

Applying the principle thus declared to the case at bar; inasmuch as the Rogers Law was unconstitutional, and the General Assembly was without power to pass it, the General Assembly is also without power to repass it under the form of a curative law.

In holding that the latter part of Section 31 is invalid so far as it attempts to validate the street railroad grant made by the Board of Administration in the city of Cincinnati to the defendant company, it has been assumed that the language, "in accordance with the provisions of any statute or act of the General Assembly" was sufficiently broad to cover "any statute or act of the General Assembly" that is unconstitutional, because it is only when the section is thus construed that the defendant could claim to have been benefited by it.

It is contended, however, by plaintiff that the section should not receive so liberal a construction, but that the words "any statute or act of the General Assembly" should be construed to mean "any statute or act" that is constitutional.

It is further contended by plaintiff that Section 31 should not be construed as attempting to validate any grant made under an

unconstitutional law, for the reason that the section expressly declares in the first part of it,

"* * that nothing in this act, or any part thereof, *shall be construed* to impair or *enlarge* the rights of any corporation now using the streets of any municipality in the state, etc. ;"

and that an attempt to validate a grant made to a street railroad corporation under an unconstitutional law is an attempt "to enlarge the rights" of such corporation.

As we find Section 31 to be unconstitutional when given the construction claimed for it by defendant, which is the construction favorable to it, we do not find it necessary to express an opinion upon the question whether such construction is the one intended by the Legislature to be placed upon it.

It is also contended that Section 31 conflicts with Article II, Section 28 of the Constitution of Ohio, which declares "that the General Assembly shall have no power to pass retroactive laws," but we do not find it necessary to express an opinion upon that question.

The next defense which properly should be considered is based upon Section 137 of the new Municipal Code which reads as follows:

"Section 137.   (Solicitor.)   The solicitor shall be elected for a term of two years, and shall serve until his successor is elected and qualified.   The solicitor shall be an elector of the city, and admitted to practice law in the courts of Ohio.

"The powers and duties of the solicitor shall be such as are provided in Sections 1776, 1777, 1778, 1779 and 1780, of the Revised Statutes of Ohio; such as are provided in this act, and all other acts or parts of acts having uniform operation throughout the state and not inconsistent with this act, and he shall prepare all contracts, bonds and other instruments in writing in which the city is concerned, and shall serve the several directors and officers mentioned in this act as legal counsel and attorney; *provided that no action, as provided in Sections 1777 and 1778, to enjoin the performance of a contract or the payment of any bonds heretofore or hereafter entered into or issued by a municipal corporation, shall be brought or maintained unless such action is commenced within one year from the date of such contract of bonds, and this provision shall apply to pending cases.** The solicitor shall also be prosecuting attorney of the police court, and shall receive for this

* Italics ours.

service such compensation as council may prescribe, and such additional compensation as the county commissioners shall allow; provided, that where council allows an assistant or assistants to the solicitor, said solicitors may designate an assistant or assistants to act as prosecuting attorney or attorneys of the police court. The duties of the solicitor as prosecuting attorney of the police court shall be such as are provided in Section 1813 of the Revised Statutes; such as are provided in this act, and in all other acts or parts of acts applying to all cities of the state and not inconsistent herewith. In case of the inability or absence of the solicitor or any of his assistants to act as prosecuting attorney of the police court, the provisions of Section 1815 of the Revised Statutes shall apply."

The grant involved in this case was made on August 13, 1896, and the action was begun on January 21, 1901. Assuming for the purpose of discussion, as contended by the defendant, that if the section is constitutional it requires the dismissal of this case, because it seeks to enjoin a contract entered into more than a year from the date of the contract, the question arises—Is the section constitutional?

The principle is elementary that a municipal corporation has a two-fold character—one public, in which it acts as a subordinate agency of the state, and the other private, in which it has proprietary interests in property similar to those of a private individual. 15 Am. & Eng. Ency. of Law, 985.

In discussing the power of the Legislature over a municipal corporation, Cooley in his Constitutional Limitations approves on page 289 the following citation:

"It may be admitted that corporations for mere public government, such as towns, cities and counties, may in many respects be subject to legislative control. But it will hardly be contended that even in respect to such corporations the legislative power is so transcendent that it may at its will take away the private property of the corporation, or change the uses of its private funds acquired under the public faith."

The section under consideration does not provide that "No action to enjoin the performance of a contract for a street railway franchise shall be brought, etc.," but includes all contracts entered into, or bonds issued by a municipality, thus embracing contracts

and bonds affecting it in its proprietary or private character as well as in its public character.

To quote from the brief of counsel for plaintiff:

"No matter upon what ground bonds issued on behalf of the municipality may be invalid, even though through fraud or otherwise, the corporation never received a cent of consideration for the bonds, and even though the guilty party may be the owner of the bonds, and even though in law and equity he has no claim whatsoever to recover from the city upon such bonds, yet after the passage of this act the payment of such bonds by any officer of the city cannot be enjoined either by the city solicitor or by a taxpayer, and if the suit is pending and more than one year has elapsed since the date of the bonds, the case must be dismissed. And so as to contracts. No matter how complete in law and equity the defense to the contract may be, such contract cannot be enjoined, or if pending must be dismissed."

That an act is invalid which thus arbitrarily dismisses an action affecting the proprietary rights of a municipal corporation is a proposition beyond dispute; because the principle is well settled that while the Legislature may shorten the time within which suits to enforce existing causes of action may be commenced, yet a reasonable time must be given by the new law for the commencement of the suit before the bar takes effect. *Wheeler* v. *Jackson,* 137 U. S., 225.

In Cooley's Constitutional Limitations, (8 Ed.), 449, 450, it is said:

"All statutes of limitation also, must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing right of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of it's provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action."

See, also, *Sohn* v. *Watterson,* 17 Wall. (U. S.), 596.

The Ohio authorities are to the same effect. In *Reckner* v. *Warner,* 22 O. S., 294, it is said:

"We are inclined to give this construction to the statute for the reason, among others, that we deem it beyond the power of the

Legislature to bar, by a statute of limitations, an action or a right secured by a constitutional provision immediately upon the accruing or maturing of the right. Such legislation, if not in terms, would in effect nullify the Constitution and work a forfeiture of private property."

In *Lafferty* v. *Shinn,* 38 O. S., 48, it is declared that—

"It is not within the power of the Legislature to abridge the period within which an existing right may be so asserted as that there shall not remain a reasonable time within which an action may be commenced."

And in *Bartol* v. *Eckert,* 50 O. S., 42, it is declared that the principle is settled—

"That statutes of limitations should allow a reasonable time after they take effect for the commencement of suits upon existing causes of action."

We are not left to general reasoning on the subject of street railroad franchises to determine that in Ohio the interest which a municipality has in a street railroad grant is a private and proprietary interest. This question was distinctly decided in the case of *The Cincinnati Street Railway Co.* v. *Richard Smith,* 29 O. S., 291, and it was there held that the state reserved no property interest in the streets, and that the revenues and profits that are to accrue from the use of the streets by a street railway company will be the private property of the city in which the state has no interest whatever, and that the street railway grant when consummated is a contract made on behalf of the municipal corporation.

As this case was decided more than twenty-five years ago, and as it has not been reversed, modified, qualified or distinguished during all that period of time, it is reasonable to conclude that the principle declared has met with the approval of the bench and bar, as well as the Legislature of the state, and that it is now too fully settled in the law of Ohio to be disturbed. The following citation bears particularly upon the question under discussion:

"Following the order in which objections are made in argument by counsel for plaintiffs in error, the first stated is in effect this: That Section 159 does not refer to or include contracts in general,

but is confined to contracts made in *behalf* of the city, in contravention of the laws and ordinances governing the same, and that a contract formed by the acceptance of a grant made by the city of an easement in its public streets, is not a contract made in behalf of the city.

"This objection is made upon the assumption that the city has no property right in the public streets. And it is contended, that such property being in the public, the grant is a contract made in behalf of the public, in the making of which the city does not act in its own behalf as a corporation, but as the agent of the public, in the exercise of a governing power of the state, delegated to it in the particular instance to be executed in the mode authorized.

"The correctness of this assumption may be determined by the provisions of the statutes on the subject.

\* \* \* \* \* \* \* \* \* \* \*

"It seems to us that the provisions of these sections negative the claim that the proposed contract between the city and defendants street railroad companies, when the easement granted in the streets is accepted by them, will not constitute a contract made in *behalf* of the city. The city holds the fee of the streets in trust for the uses intended, and the care, supervision and control of them is expressly imposed upon the council. The 411th Section of the Municipal Code confers upon council the power to make the grant in question;

\* \* \* \* \* \* \* \* \* \* \*

"These sections taken together show that the state, in its sovereign character, has reserved no property interest in the streets in question. The revenues and profits that are to accrue from the use of the streets in the mode contemplated will be the *private property of the city,* in which the state has no interest whatever.

"Under the plain provisions of the sections quoted, authorities need not be cited to show *that the proposed contract, if consummated, would be one made in behalf of the corporation.*"

The foregoing citation leaves no doubt that under the law of Ohio when the Legislature undertakes to pass a law shortening the period of time in which an action may be brought by a municipality to have declared the invalidity of a street railroad franchise, it is dealing with the private interests of the municipality, and that unless a reasonable time is afforded the municipality under the new law to assert its rights after the passage of the law, it is invalid; and *a fortiori* is this true when the Legislature orders the

dismissal of such a case which is pending at the time of the passage of the law.

But if for the purpose of argument it be admitted that a contract for a street railroad franchise is not a contract affecting the municipality which granted it in its private or proprietary character, but only in its governmental character, nevertheless Section 137 must be held to be invalid as to such a contract because it covers municipal contracts of every kind and it is impossible to say that the Legislature would have passed it even though it supposed it was invalid as to municipal contracts of a private character. The whole section must fail under the well known principle that when part of a section is unconstitutional the whole section fails unless the court can separate the constitutional part from the unconstitutional part and declare that the Legislature would have passed the law even though it knew it was unconstitutional in part.

Cooley on Cons. Lim., 211-212.
Sutherland on Statutory Constitution, Sec. 174.
State v. Perry County, 5 O. S., 497.
State v. Pugh, 43 O. S., 98.
Monroe v. Collins, 17 O. S., 666-684.
Taylor v. Ross County, 23 O. S., 22-84.

There is another principle well settled in this state, the application of which to Section 137 requires that at least so far as the case at bar is concerned it be held unconstitutional and void.

The principle is that "the constitutionality of a statute depends upon its operation and effect, and not upon the form it may be made to assume."

In applying this principle in the case of The State v. Hipp, 38 O. S., 224, the Supreme Court said:

"But it is our duty to look through the collocation of words, whatever the form, to the operation and effect of the statute and determine from that whether it is within the constitutional inhibition. Remarks bearing upon the subject will be found in cases already referred to, but the observations of White, C. J. in the District Court case, 34 O. S., 431, 440, are more pertinent. 'The Constitution,' said he, 'must be interpreted and effect given to it as the paramount law of the land equally obligatory upon the Legislature as upon other departments of the government and individual

citizens, according to the spirit and intent of its framers as indicated by its terms. An act violating the true intent and meaning of the instrument, although it may not be within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution as properly interpreted and understood and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in terms forbidden.' And see *Monroe* v. *Collins,* 17 O. S., 665; *Walker* v. *Cincinnati,* 21 O. S., 14-53; *Eichenlaub* v. *The State,* 36 O. S., 140. The doctrine so enunciated we take this occasion to reaffirm in applying it to the statute under consideration."

On April 22, 1896, the Legislature passed the law popularly known as the "Rogers Law." The law was unconstitutional because a special law conferring corporate powers. On August 13, 1896, the Board of Administration in Cincinnati acting under this law granted to the defendant company a street railroad franchise for fifty years. Subsequently, as provided by law, a taxpayer began this action to have said grant declared void, on the ground that the law under which it was made was unconstitutional. This court in general term declared the law to be unconstitutional. Subsequently the Legislature passed Section 137 which directs this action to be dismissed and declares that no action shall be brought to question the validity of said grant.

Can there be any doubt that while this legislation in form has relation to the statute of limitations, it is in effect a validation of the unconstitutional grant made under the Rogers Law and is, therefore, void for the same reasons as we found Section 31 invalid when it attempted directly (instead of indirectly as is done in Section 137), to validate this grant? To hold otherwise is to hold that the Legislature may do by indirection what the Constitution directly forbids; that the constitutionality of laws is a matter of form and not of substance.

Counsel for the defendant company fully recognize that Section 137 merely does by indirection what Section 31 attempts directly to do, because in their brief they say:

"Sections 137 and 31 are *in pari materia* and should be construed together. For what difference in principle is there between legislative action which puts an end to a suit including any judgment

rendered therein by legalizing the thing previously adjudged to be void, and legislative action forbidding the suit to proceed, or, in other words, commanding it to be dismissed?"

We agree with counsel for defendant that there is no difference in principle, and for that reason we believe Section 137 to be unconstitutional as well as Section 31.

It is but fair to counsel for defendant, however, to say that in making the admission which they do that there is no difference in principle between Section 31 and Section 137, they do so with the claim that both sections are constitutional for the reason that the streets of municipalities belong to the state and that the state therefore may make a direct grant of a street railroad franchise, or indirectly make a grant ordering the dismissal of a case whose purpose is to have declared invalid one previously made by a municipality.

The unsoundness of this principle as generally contended for, and as applied to this case, has been pointed out when contended for by the defendant in the argument to sustain the constitutionality of Section 31; and to again point out the fallacy of that contention would be to indulge in unwarranted repetition of statement and argument.

It is further contended by counsel for plaintiff—

(1) That Section 137 is in direct conflict with Article II, Section 28 of the Constitution of Ohio which declares that "the General Assembly shall have no power to pass retroactive laws."

(2) That 137 does not apply to a case where the taxpayer seeks "to restrain the abuse of its corporate power," and as it was expressly decided in *Cincinnati Street Railway Company* v. *Smith,* 29 O. S., that the operation of a street railroad franchise could be restrained as an "abuse of corporate power," Section 137 has no application to this case.

(3) That Section 137 does not apply to a case where the ground of complaint is the *unconstitutionality* of a law under which the city and others are attempting to act.

(4) That Section 137 has no application to this case, because its language is that no action to enjoin the performance of a contract "shall be brought or maintained unless such action *is* commenced within one year from the date of such contract or bond etc.," and

the word "is" gives the provision a prospective operation and has reference to suits brought after the act was passed or after it goes into effect, viz.: May 4, 1903.

As we find Section 137 void if it applies to this case, we do not find it necessary to express an opinion upon any of these four propositions.

The defendant for a further defense sets up in its answer that the cause of action set forth in the petition is barred by the statute of limitations in force at the time when the action was commenced. The "Rogers Law" resolutions were passed August 13, 1896, and this action was commenced January 21, 1901. We learn from the brief of the defendant that this defense rests upon the contention that this case falls within the bar prescribed in Section 4982, which fixes a period of four years as the limitation for "an action for an injury to the rights of the plaintiff not arising on contract and not hereinafter enumerated."

We need not inquire whether in case any statute of limitations applied to a case of this character, it would be the limitation of four years or the limitation of twenty-one years, which relates to the recovery of real estate (Sec. 4977), or the limitation of ten years, which relates to "an action for relief not hereinbefore provided for"; because the unlawful laying of tracks and the operation on the same in the streets of a city is a public nuisance, and no statute of limitations runs against a public nuisance.

And it is further settled in *Cincinnati Street Railway Co.* v. *Richard Smith,* 29 O. S., 291, that when such unlawful laying of tracks in the streets of a municipality is the result of the action of the city authorities and a street railroad company, such act is an "abuse of corporate power" within the meaning of Section 1777 and Section 1778.

The authorities to sustain the proposition that the unlawful laying of tracks in a street is a public nuisance are so numerous, that citations will be made from only a few of them.

"An unauthorized use of a public highway by a street railway company in the construction or operation of its road is a nuisance *per se,* being an invasion of a public easement. The company making such unauthorized use of the streets may be indicted for maintaining a public nuisance, or it may be enjoined." Wood on Nuisances, Sec. 274; 23 Am. & Eng. Ency. of Law, 958.

"Now if a horse railway is laid in a highway without legislative authority what is the situation? The easement of the public without the public consent is interfered with. Nothing is taken from the owner in fee. The act is simply the creation of a public nuisance. The remedy against such a nuisance is by indictment or in a proper case by suit in equity instituted by the Attorney-General." *VanHorn* v. *Newark Passenger Ry. Co.*, 48 N. J. Eq., 332.

The authorities are uniform, too, in holding that no right to maintain a public nuisance can be acquired by lapse of time.

> Wood on Limitations (3 Ed.), Sec. 180.
> *Atty.-Gen.* v. *Revere Copper Co.*, 152 Mass., 444.
> *New Salem* v. *Eagle Mill Co.*, 138 Mass., 8.

In such cases where the injury is constantly recurring the statute begins to run as to each cause of action from the time of the damage which gave rise to it and not from the time of the original act.

> 19 Am. & Eng. Ency. of Law, 201.
> *Little Miami R. R. Co.* v. *Com'rs*, 31 O. S., 350.

In *Railroad* v. *Commissioners*, (35 O. S., 1):

"A railroad company wrongfully laid its track in a public highway and after it had continued the obstruction more than six years an action was brought against it under the act of 1878. *Held*: That neither the limitation of four years nor that of six years was a bar to the action."

On page 8 it is said:

"Such an obstruction as that created in this case is by the act of 74 O. L., 262, declared to be a nuisance and the person erecting or maintaining it is liable, etc.    *    *    *    *    Nor can the statute of limitations apply to this for the reason stated in 31 O. S., 338. *Little Miami Railroad* v. *Commissioners*."

See, also, *Millcreek Valley St. Ry.* v. *Carthage*, 18 C. C., 228; and Sec. 2640, Rev. Stats., which makes it the duty of a city to keep the streets "free from nuisance."

As the case of *Cincinnati Street Railway Company* v. *Smith*, 29 O. S., settled the right of the taxpayer under Sections 1777 and 1778 to bring an action to enjoin the operation by a street railroad company of an illegal street railroad franchise, and as

every act of operation thereunder is a fresh nuisance, the taxpayer continues to have such right as long as the nuisance continues, and his right is not barred by any statute of limitations.

The two remaining defenses are (1), that the defendant expended money in reliance upon the validity of its grant and, (2), that by the decisions of the Supreme Court of Ohio at the time the grant was made the law authorizing the same was constitutional.

Both of these defenses were considered in the former opinion in this case. The first was found not to constitute a defense, and the second the court held, from the judicial notice which it takes of the decisions of the Supreme Court, stated facts which were not true.

Since the submission of this case Mr. William M. Ampt, a stockholder in the defendant company, by leave of court has filed a brief on behalf of the company.

So far as the brief argues the questions considered in the foregoing opinion we find no occasion to add anything to what we have already said. The brief, however, makes three new points to which we will refer.

1. That the granting to a taxpayer of the right to complain of an injury to the municipality which does not affect him personally is a mere matter of favor on the part of the Legislature and may be taken away at any time; the right to seek redress for an injury personal to himself exists without a statute. If therefore Sections 1777 and 1778 had been repealed outright instead of modified, the taxpayer would have no right to complain.

This argument proceeds upon the hypothesis that Section 1777 and Section 1778 as modified affect only the right of the taxpayer to bring an action in injunction; whereas they affect the right of a municipality itself to bring such an action, as well as the right of the taxpayer, and the legislation must be regarded as an entire scheme upon the part of the General Assembly. It is not possible to separate it into parts and uphold one part and declare void another part. The action, too, is not brought by the taxpayer for himself, but on behalf of the municipality. The hypothesis, therefore, upon which this argument is based does not exist, and it is unnecessary to consider whether, if the hypothesis were true, the argument would be sound.

2. That Section 1778 is unconstitutional inasmuch as it gives a *taxpayer only* the right to bring such an action as is provided for by the section, and is therefore a special law.

The section has been in existence for many years, and as it has been before the courts on many occasions it is a reasonable presumption that it is constitutional.

The right of the General Assembly to classify or specialize subjects for the purpose of legislation has been recognized from the adoption of the Constitution, provided that when such subjects are general in their nature, the *law must have* a uniform operation throughout the state, and must not confer corporate power.

*State* v. *Nelson,* 52 O. S., 88.
*Horstman* v. *St. R. R. Co.,* 10 Dec.

We find no constitutional objection to Section 1778.

3. That the proceedings in quo warranto authorized by the statute are sufficient to afford the remedy denied by Sections 1777 and 1778 as modified.

It is apparent that Sections 1777 and 1778 relate in part at least to causes of action which could not be reached by proceedings in quo warranto; but even if such were not the case the proceedings in quo warranto greatly fall short of the remedy afforded by Sections 1777 and 1778.

Section 6762, in declaring who may commence an action in quo warranto, says:

"The Attorney-General, or a prosecuting attorney, when directed by the Governor, Supreme Court, or General Assembly shall commence any such action; and when upon complaint or otherwise he has good reason to believe that any case specified in the preceding section can be established by proof he shall commence an action;" and in declaring the person upon whose relation the action may be brought, it is said, in Section 6763,

"Such officer may upon his own relation bring any such action, or he may, on leave of the court, or a judge thereof in vacation, bring the action upon the relation of another person; and if the action be brought under the first subdivision of Section 6760 he may require security for costs to be given as in other cases."

It is apparent from these sections that neither the municipality nor a taxpayer can bring a proceeding in quo warranto as a mat-

ter. of right, but are dependent for the exercise of such a right upon the consent of the Attorney-General, a prosecuting attorney, the Governor, the Supreme Court, or the General Assembly.

It is therefore quite apparent that if there is a remedy by quo warranto to test the question of the validity of the defendant's franchise the remedy falls very short of the remedy provided by Sections 1777 and 1778, which confer on the municipality or the tax-payer the *right* to maintain an action.*

In our opinion the demurrers to the second, third, fourth and fifth defenses in the amended answer should be sustained, and the case remanded to special term for the trial of the questions of fact and law involved in the first defense.

*Theodore Horstman,* for plaintiff.

*J. W. Warrington, E. W. Kittredge,* for defendant.

*Wm. M. Ampt,* for himself.


*NOTE.—In an open letter to the Attorney-General written by Mr. Ampt with reference to this case since the announcement of the above decision he said: "While of the opinion once that quo warranto would be a proper remedy in such a case, it seems that it is not so, where the purpose of the suit is to oust a company from the occupation of municipal grounds. The case of *The State* v. *the Cincinnati, Georgetown & Portsmouth Railroad Company,* No. 8069, Supreme Court, on quo warranto to oust that company from the occupation of municipal Water Works ground was dismissed, as not a proper quo warranto suit, the merits of the case not being passed on. Probably ejectment or an injunction, under R. S. 1777, is the only proper remedy to oust from the unauthorized use of city property."